ATTORNEY FOR APPELLANT
Michael C. Keating
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ryan D. Johanningsmeier
Deputy Attorney General

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Jul 30 2015, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 87S01-1410-CR-684

CRAIG SAMPSON,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Warrick Superior Court No. 2, No. 87D02-1201-FC-30
The Honorable Robert R. Aylsworth, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 87A01-1312-CR-534

**July 30, 2015**

**Rucker, Justice.**

Craig Sampson appeals his conviction for child molesting contending it must be vacated and this cause remanded for a new trial because, among other things, improper vouching testimony was allowed into evidence. We affirm the judgment of the trial court.

**Facts and Procedural History**

S.B. and her family were members of the Tennyson Free Methodist Church in Warrick County where S.B.'s father served as pastor. Craig Sampson—a family friend—was also a member of the church. Over the years that Sampson attended the church, it was not uncommon for S.B. to sit near him during church services, "[s]ometimes next to him and sometimes on his lap." Tr. at 35. S.B.'s entire family sometimes visited the Sampson home and there were also times on the weekends when S.B. visited the home with only Sampson and his wife present. S.B. considered Sampson a "friend" and they would do "a lot of things together." Tr. at 35.

In the spring or summer of 2008 or 2009, when S.B. would have been nine or ten years of age, she visited Sampson's home after church. While Sampson's wife took a nap, fifty-two to fifty-three-year-old Sampson watched television and S.B. sat at a computer playing games. At some point Sampson asked S.B. to get up from the computer so that he could sit down. S.B. then sat on Sampson's lap and asked Sampson to scratch her back in a spot that itched. According to S.B., Sampson began rubbing her back under her shirt and then "slowly moved to the front of [her] body, into [her] pants." Tr. at 49. S.B. testified that Sampson rubbed her stomach and then moved his hands inside her pants and under her underwear. When Sampson touched S.B. in her vaginal area she felt a "tingling sensation." Tr. at 54. At that point S.B. asked Sampson to stop, and "[h]e slowly took his hand out." Tr. at 54. Sampson told S.B. not to tell her parents or he would be in trouble.

S.B. did not tell anyone about the incident until two or three years later. Specifically, during the summer of 2011 S.B. attended a week-long church camp during which she was in a group that discussed sexual purity. Among other things attendees were advised "[i]f someone were to touch you that doesn't make you feel comfortable then you need to tell someone because it's illegal." Tr. at 56. S.B. then told her parents about the incident involving Sampson who in

turn contacted the authorities. An investigation ensued. After obtaining preliminary information an officer from the Warrick County Sheriff's Office referred S.B. and her parents to "Holly's House" in Evansville, which was described as a "child and adult advocacy center . . . an interview location and a resource location for alleged victims and of [sic] victims of intimate crimes." Tr. at 111. Jenny Wood, the former associate director and child forensic interviewer at Holly's House conducted a forensic interview[1] of S.B., during which S.B. recounted the incident with Sampson.

On January 21, 2012 the State charged Sampson with child molesting as a class C felony. A jury trial began on November 26, 2012 but ended when the trial court declared a mistrial after the jury was unable to reach a unanimous verdict. A second jury trial began on October 21, 2013. Over Sampson's objection Wood was allowed to provide testimony concerning Child Sexual Abuse Accommodation Syndrome.[2] Without objection, Wood also testified she was trained to detect signs of coaching during a forensic interview and that she did not observe any signs that S.B. had been coached. S.B. also testified; and over Sampson's objection she responded to the State's inquiry of how the incident with Sampson affected her, which Sampson characterized as impermissible victim impact testimony. The jury returned a verdict against Sampson of guilty as charged. The trial court thereafter sentenced him to four years imprisonment, with one year executed at the Warrick County Security Center and three years suspended to probation.

Sampson appealed contending: (1) the trial court erred in admitting evidence concerning Child Sexual Abuse Accommodation Syndrome; (2) admission of testimony that the interviewer did not observe signs of coaching was fundamental error; and (3) the trial court erred in allowing

---

[1] In the context of investigating child sexual abuse allegations, a forensic interview is a conversation with an alleged child victim of abuse that is conducted by a neutral and trained professional in order to help determine whether abuse has occurred. See Am. Prof. Soc'y on the Abuse of Child., Practice Guidelines: Forensic Interviewing in Cases of Suspected Child Abuse, 3 (2012). The purpose of the interview is to gather as many facts about the allegation of abuse as possible in an unbiased, non-threatening and neutral way, taking into account the child's age, development level, language skills and emotional needs. See Id. at 4-5.

[2] Generally speaking Child Sexual Abuse Accommodation Syndrome involves behaviors that are often typical of child molest victims. See Steward v. State, 652 N.E.2d 490, 492 (Ind. 1995). In a slightly different context, we discuss this matter in more detail below.

alleged victim impact testimony.  In a memorandum decision the Court of Appeals affirmed the judgment of the trial court concluding that with respect to issues one and three error if any was harmless.  And as for issue two there was no error, let alone fundamental error.  See Sampson v. State, No. 87A01-1312-CR-354 (Ind. Ct. App. Aug. 18, 2014), vacated.  We previously granted transfer to explore issue number two.  In all other respects we summarily affirm the decision of the Court of Appeals.  See Ind. App. R. 58(A)(2).  Additional facts are set forth below.

## Discussion

During direct examination the exchange between the State and witness Jenny Wood was as follows:

> Q.  What does the term coaching mean to you?
>
> A.  Coaching is a term used in forensic interviewing where someone has told a child what to say and typically it's somebody close to the child and it's usually an untrue statement.
>
> Q.  Have you been trained in looking for signs of coaching?
>
> A.  Yes.
>
> Q.  Okay and have you ever conducted an interview where you believed that a person had been coached?
>
> A. Yes.
>
> Q.  What are some signs that if observed might lead you to believe that a witness or a child had been coached?
>
> A.  Typically individuals who have been coached can't recall details because they have not been told details when they were coached to tell a statement.  They may have not be [sic] able to answer questions that go beyond what their statement - the statement that they know about, such as where did it happen, was there anybody with you, so more detail oriented questions, somebody who had been victimized could typically answer but since they were coached they could not because that information was not shared with them.

4

Q. During your interview with [S.B.], did you observe any signs that she had been coached?

A. No.

Tr. at 124-25.

Sampson did not object to this line of questioning. On appeal he complains, "[t]estimony that the alleged victim showed no evidence of coaching constituted improper vouching for the alleged victim's credibility." Pet. to Trans. at 2. According to Sampson such testimony violates Ind. Evidence Rule 704(b)[3] and contravenes this Court's opinion in Hoglund v. State, 962 N.E.2d 1230 (Ind. 2012).

In Hoglund, the defendant was convicted of sexually molesting his daughter, A.H., until she was nearly eight years old. At trial the State presented the testimony of three expert witnesses. "In varying degrees of specificity, each witness essentially testified that A.H. was 'not prone to exaggerate or fantasize' concerning sexual matters." Id. at 1232. We concluded that the trial court erred in allowing the testimony of these three expert witnesses because "indirect vouching testimony is little different than testimony that the child witness is telling the truth. As such it is at odds with Evidence Rule 704(b)." Id. at 1237 (footnote omitted). We "decline[d] to carve out an exception to the rule for sex abuse cases." Id. (footnote omitted). And we reiterated the longstanding rule that "no witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth." Id. at 1238 (alteration omitted) (quotations omitted).

A few months after Hoglund was decided, a panel of the Court of Appeals reviewed a conviction for sexual molestation in Kindred v. State, 973 N.E.2d 1245 (Ind. Ct. App. 2012), trans. denied. In that case, Jerry Kindred was convicted of molesting A.G., the granddaughter of his live-in girlfriend. At trial, the State presented a caseworker who had conducted an interview of the alleged victim. The caseworker testified that "he did not believe A.G. had been coached."

___

[3] Rule 704(b) provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

Id. at 1251. Among other things, Kindred argued on appeal that this testimony was the functional equivalent of vouching for the alleged victim's credibility and essentially telling the jury that she was telling the truth. The Court of Appeals agreed and ultimately reversed Kindred's conviction and remanded the cause for a new trial. Noting that Hoglund did not expressly address testimony about coaching, the Court of Appeals declared:

> We read Hoglund to suggest that testimony about whether a child has been coached amounts to the same improper commentary on the child's truthfulness as testimony about whether a child is prone to exaggerate or fantasize about sexual matters. *We hold that general testimony about the signs of coaching, as well as the presence or absence of those signs in the child victim at issue*, preserves the ultimate credibility determination for the jury and therefore *does not constitute vouching*. By contrast, *where a witness opines as to whether the child victim was coached—* offering an ultimate opinion, as [the expert] did here—*the witness invades the province of the jury and vouches for the child.*

Id. at 1258 (emphasis added).

Shortly thereafter another panel of the Court of Appeals decided Archer v. State, 996 N.E.2d 341 (Ind. Ct. App. 2013), trans. denied. In that case, Jeffrey Archer was convicted of molesting his step-granddaughter. Among other things, Archer contended the forensic interviewer improperly vouched for the child's credibility when she testified she did not observe any *indicators* that the victim had been coached. The Court of Appeals disagreed and affirmed his convictions. Relying on Kindred, the Court of Appeals concluded:

> [The forensic interviewer] described the *indicators* she looks for to determine whether a child has been coached to report untrue allegations of molestation. The State did not ask [her] whether she thought [the child] had been coached; instead, the State asked [her] if she observed any of those indicators in [the child]. Therefore, based on Kindred, we cannot say the trial court abused its discretion by admitting [this] testimony.

Archer, 996 N.E.2d at 349 (emphasis added).

The underlying question posed by Kindred and Archer is whether the distinction between testimony that a child witness *has or has not been coached* and testimony that the witness *did or did not exhibit any "signs or indicators" of coaching* can be reconciled with the prohibition on indirect vouching this Court disapproved in Hoglund. Jurisdictions that have addressed whether testimony concerning coaching is permissible basically fall into three general categories. One approach, similar to that expressed in Kindred and Archer, allows general testimony about signs of coaching but prohibits opinions on whether the child has in fact been coached. See, e.g., Purdie v. State, 379 S.W.3d 541, 547 (Ark. Ct. App. 2010) (allowing forensic examiner to testify about the indicators she relies upon to determine the credibility of an alleged victim's statement but holding that "the admission of the forensic examiner's opinion that the victim's testimony was not fabricated or coached was an abuse of discretion."); State v. James W., 866 A.2d 719, 731 (Conn. App. Ct. 2005) (declaring that testimony discussing "behaviors typically exhibited by minors that have been coached" but "did not express an opinion as to whether the victim had been coached" did not constitute an assessment of the victim's credibility); State v. Wilson, 795 P.2d 336, 343-44 (Kan. 1990) (upholding the admission of a statement by a social worker that "it would be highly unlikely for that [level of detail, vocabulary, sentence construction, and consistency over time] to happen in a child who's coached" and declaring the testimony did not impermissibly comment on the victim's credibility because the witness did not testify that the victim "was or was not coached." (internal citation omitted)). And the approach taken by at least two jurisdictions allows not only general testimony about signs of coaching but also opinion testimony on whether the child has in fact been coached. See, e.g., Hoke v. State, 755 S.E.2d 876, 880 (Ga. Ct. App. 2014) (reiterating that "an expert may properly describe examination techniques *and* provide opinions about whether the results of an evaluation are 'consistent with sexual abuse'" (emphasis added) (footnote omitted)), cert. denied (June 2, 2014); State v. Krueger, 762 N.W.2d 114, 120 (Wis. Ct. App. 2008) (declaring "both logic and precedent support . . . permit[ting] expert testimony on typical signs of whether a child has been coached or evidences suggestibility and whether the complainant child exhibits such signs" (internal quotation omitted)).

Other jurisdictions appear to allow testimony concerning signs of coaching once the defendant has opened the door to such testimony. See, e.g., State v. Champagne, 305 P.3d 61, 67

(Mont. 2013) (noting defendant "implied during cross-examination that [victim's] testimony may have been coached" and finding no abuse of discretion in allowing testimony that forensic examiner observed no indications of coaching); see also State v. Baymon, 446 S.E.2d 1, 3, 4 (N.C. 1994) (noting that "otherwise inadmissible evidence may be admissible if the door has been opened by the opposing party's cross-examination of the witness" and finding no error in the admission of testimony that the witness "did not perceive that the victim had been told what to say or coached" because "[t]hrough [its] line of questioning, defense counsel, in an effort to undermine [the expert's] credibility . . . attempted to leave the impression that the victim had been coached by her relatives or social workers involved in the case").

This latter approach is in harmony with our own jurisprudence in this area. In Steward v. State, the defendant was convicted of two counts of child molesting involving two different victims. At trial the State offered expert testimony—commonly referred to as "Child Sexual Abuse Accommodation Syndrome"—that one of the victims had exhibited changed behaviors consistent with victims of child abuse. Steward, 652 N.E.2d at 491. Discussing the admissibility of such testimony, the Court evaluated the approaches taken in other jurisdictions and determined, among other things, "we decline to distinguish between expert testimony which offers an unreserved conclusion that the child in question has been abused and that which merely uses syndrome evidence to imply the occurrence of abuse." Id. at 499. The Court explained:

> Where a jury is confronted with evidence of an alleged child victim's behaviors, paired with expert testimony concerning similar syndrome behaviors, the invited inference—that the child was sexually abused because he or she fits the syndrome profile— will be as potentially misleading and equally as unreliable as expert testimony applying the syndrome to the facts of the case and stating outright the conclusion that a given child was abused. The danger of the jury misapplying syndrome evidence thus remains the same whether an expert expresses an explicit opinion that abuse has occurred or merely allows the jury to draw the final conclusion of abuse.

Id. Although the Steward analysis specifically pertained to Child Sexual Abuse Accommodation Syndrome, the same analysis is equally appropriate concerning expert testimony about coaching behavior. More precisely when a jury is presented with expert testimony concerning certain

coaching behaviors, the invited inference that the child has or has not been coached because the child fits the behavioral profile is likely to be just as potentially misleading as expert testimony applying the coaching behaviors to the facts of the case and declaring outright that a given child has or has not been coached. The danger of the jury misapplying this evidence thus remains the same whether an expert expresses an explicit opinion that coaching has or has not occurred or merely allows the jury to draw the final conclusion.

We conclude therefore that the subtle distinction between an expert's testimony that a child *has or has not been coached* versus an expert's testimony that the child *did or did not exhibit any "signs or indicators" of coaching* is insufficient to guard against the dangers that such testimony will constitute impermissible vouching as we expressed in Hoglund. Nevertheless, "once a child's credibility is called into question proper expert testimony may be appropriate." Steward, 652 N.E.2d at 499. "[B]ehavioral characteristics of child abuse victims, even where inadmissible to prove abuse, are far less controversial when offered to rebut a claim by the defense that a child complainant's behavior . . . is inconsistent with her claim of abuse." Id. at 496. We thus align ourselves with those jurisdictions that permit testimony about the signs of coaching and whether a child exhibited such signs or has or has not been coached, provided the defendant has opened the door to such testimony.[4]

In this case, the State introduced testimony to the effect that Wood did not observe any signs that S.B. had been coached. Although the State was careful to limit Wood's comments to her observations of coaching indicators, this was neither in response to defense questioning, nor to rebut an express claim that S.B. had been coached. This testimony was thus improper because "indirect vouching testimony is little different than testimony that the child witness is telling the truth." Hoglund, 962 N.E.2d at 1237 (footnote omitted). However, as we indicated earlier

---

[4] Opening the door refers to the principle that where one party introduces evidence of a particular fact, the opposing party is entitled to introduce evidence in explanation or rebuttal thereof, even though the rebuttal evidence otherwise would have been inadmissible. See Clark v. State, 915 N.E.2d 126, 130, 131 (Ind. 2009) (declaring: "Otherwise inadmissible evidence may be admitted where the defendant opens the door to questioning on that evidence. The door may be opened when the trier of fact has been left with a false or misleading impression of the facts[;]" thus, finding no error in the admission of defendant's MySpace page because "it was proper to permit the prosecution to confront [defendant] with his own seemingly prideful declarations that rebutted his defense" (internal citation omitted)).

Sampson did not object to this testimony. And "[f]ailure to object at trial waives the issue for review unless fundamental error occurred." Halliburton v. State, 1 N.E.3d 670, 678 (Ind. 2013) (quoting Treadway v. State, 924 N.E.2d 621, 633 (Ind. 2010) (citation omitted)). "The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes procedural default precluding consideration of the issue on appeal." Id. This exception "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Id. (quoting Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006)). "Harm is not shown by the fact that the defendant was ultimately convicted; rather harm is found when error is so prejudicial as to make a fair trial impossible." Hoglund, 962 N.E.2d at 1239.

At stake in this case was the credibility of the alleged victim, S.B., who was thoroughly questioned on cross-examination and whose testimony did not waver from that given during direct examination. Sampson testified in his own defense and basically agreed with many of the details recounted by S.B. including rubbing S.B.'s stomach as S.B. sat on his lap at the computer. He denied however placing his hand in S.B.'s pants and touching her vaginal area. It was within the province of the jury to credit S.B.'s testimony over that of Sampson. Further we are of the view that Wood's response of "[n]o" to the question "[d]uring your interview with [S.B], did you observe any signs that she had been coached" was not so prejudicial to Sampson as to make a fair trial impossible. This is especially true given that defense counsel thoroughly cross-examined Wood including challenging the basis on which she reached her conclusion. See Tr. at 131-32. In sum Sampson's fundamental error argument fails.

**Conclusion**

We affirm the judgment of the trial court.

Rush, C.J., Dickson, David and Massa, JJ., concur.

10