## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Bruce W. Graham
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cory Desarmo,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 12, 2016

Court of Appeals Case No.
79A02-1504-CR-228

Appeal from the Tippecanoe
Circuit Court

The Honorable Thomas H. Busch

Trial Court Cause No.
79C01-1307-FA-8

**Vaidik, Chief Judge.**

# Case Summary

[1] Cory Desarmo appeals his four convictions for Class A felony child molesting, two convictions for Class C felony child molesting, and Class A felony conspiracy to commit child molesting for molesting A.A. He also appeals two thirty-year sentences for Class C felony child molesting.

[2] A forensic interviewer's testimony about where and when A.A. disclosed abuse is not precluded by the Indiana Evidence Rule 704(b) prohibition against vouching. As the interviewer neither disclosed the contents of the interview nor commented on A.A.'s credibility, there was no error.

[3] Further, the evidence was sufficient to convict even though A.A. wrongly identified a defense attorney as the perpetrator where A.A. identified Desarmo in a photograph taken of him near the time of the crimes as the person who molested her. Desarmo's appearance had changed between the crimes and the trial, and A.A. had a sufficient independent basis to identify Desarmo in the photograph having lived with him for two-and-a-half years.

[4] We do remand for the trial court to correct the thirty-year sentences on the Class C felony counts as the sentences are in excess of the eight-year maximum.

# Facts and Procedural History

[5] A.A. was born in 2006 to Elizabeth Carle in Arizona. In October 2010, Carle moved from Arizona into the home Cory Desarmo shared with his then-wife Susan Byatt in Lafayette, Indiana. A.A. followed Carle in December 2010.

Desarmo, Carle, and A.A. lived in the same house from December 2010 until May 2013.

[6]     During that time, Desarmo and Carle molested A.A. on multiple occasions. Specifically, Desarmo forced A.A. to manually stimulate Desarmo until he ejaculated, and to fellate Desarmo. On one occasion, Desarmo pressed his penis so far into A.A.'s throat that she vomited. A.A. was forced to allow Desarmo to lick her vagina. Carle participated in the sexual abuse of her daughter by inserting her finger into A.A.'s anus while A.A. was being forced to manually stimulate or fellate Desarmo. Desarmo and Carle threatened to beat A.A. with a belt buckle if she refused their sexual demands. They also told A.A. that she would go to jail if she told anyone what Desarmo and Carle were doing to her.

[7]     A.A. disclosed the abuse while visiting her paternal grandmother in Arizona. On June 19, 2013, Sandy Corral conducted a child forensic interview with A.A. at the Southwest Family Advocacy Center in Goodyear, Arizona. The following day, Tippecanoe County Sheriff's Department Lieutenant Thomas Lehman went to Desarmo's house and spoke with both Desarmo and Carle. Corral conducted a second, follow-up interview with A.A. on June 27. Following the second interview, Detective Anne Baker of the Avondale, Arizona Police Department began her investigation. The results of Detective Baker's investigation were turned over to the Tippecanoe County Sheriff's Department. Following the investigation, the State charged Desarmo with nine counts: six counts Class A felony child molesting (Counts I-VI); two counts

Class C felony child molesting (Counts VII-VIII); and Count IX Class A felony conspiracy to commit child molesting.

[8] A jury trial was held eighteen months later, in February 2015. At trial, Corral testified to her qualifications and described the Southwest Family Advocacy Center. Corral provided a detailed description of the procedure she uses to interview children, including a description of each stage in a typical interview. Finally, she testified that she interviewed A.A. on two occasions, June 19 and June 27, 2013. Corral did not testify to the content of either interview, nor did she testify to the quality of the interviews.

[9] A.A. also testified, describing the molestations in explicit detail. She testified that Desarmo and her mother were the people who molested her, but A.A. incorrectly identified one of the defense attorneys as Desarmo. However, A.A. was shown a picture of Desarmo taken around the time that she was living with him and A.A. identified Desarmo in the picture.

[10] Byatt, now Desarmo's ex-wife, identified him in the courtroom. Byatt also identified Desarmo in the same picture that A.A. testified was a picture of him. She testified that the picture reflected Desarmo's appearance when A.A. lived with him. She further testified that Desarmo no longer looked the way he did when A.A. was living with him—that when A.A. was living with Desarmo, he had a full beard "and he had a bit of a belly." Tr. p. 353.

[11] Lieutenant Lehman also testified that the man in the picture A.A. identified as Desarmo was Desarmo. Lieutenant Lehman confirmed that the picture

showed what Desarmo looked like on June 20, 2013—the day that Lieutenant Lehman met him at his home.

[12] Prior to instructing the jury, the trial court entered a directed verdict, without objection, on Counts V and VI because no evidence was presented to support either one.[1] Included in the instructions to the jury was an instruction on conspiracy to commit child molesting. The instruction read in pertinent part:

> Before you may convict the Defendant Cory Desarmo of Conspiracy to Commit Child Molesting as a Class A felony, the State must have proved each of the following beyond a reasonable doubt:
>
> * * * * *
>
> 4. And one or more of the following overt acts were performed in furtherance of said agreement, to wit:
>
> > (a) On one or more occasions Desarmo, Carle, and/ or AA. removed their clothing; and /or
> >
> > (b) On one or more occasions Desarmo and / or Carle were present in the room while the deviate sexual conduct occurred; and / or
> >
> > (c) On one or more occasions Desarmo had A.A. rub his penis with her hand; and/or
> >
> > (d) On one or more occasions Carle placed her finger inside A.A.'s anus; and /or

---

[1] Both Count V and Count VI alleged Class A felony child molesting for "an act involving the hand of Cory A. Desarmo and the vagina and/or anus of A.A."

(e) On one or more occasions Desarmo forced A.A. to put her mouth on Desarmo's penis; and / or

(f) On one or more occasions Desarmo picked up AA. and placed her on his face so he could lick her vagina;

* * * * *

Appellant's App. p. 145.

[13] The jury found Desarmo guilty of four counts of Class A felony child molesting (Counts I-IV); two counts of Class C felony child molesting (Counts VII-VIII); and one count of Class A felony conspiracy to commit child molesting (Count IX). Judgment of conviction was entered for the Class A felony and Class C felony child molesting counts. The conspiracy count was merged with Count I. The judge sentenced Desarmo as follows: Count I: fifty years Indiana Department of Correction ("DOC"); Count II: forty years DOC; Count III: thirty years DOC; Count IV: thirty years DOC; Count VII: thirty years DOC; Count VIII: thirty years DOC; all sentences to run concurrently.

# Discussion and Decision

[14] Desarmo now appeals his conviction and sentence. He argues that Sandy Corral's testimony was impermissible vouching; that there was insufficient evidence to establish his identity as the person who molested A.A.; that the final jury instruction for conspiracy to commit child molesting impermissibly included evidentiary matters in the portion of the instruction addressing proof of an overt act; and that the sentences for Counts VII and VIII exceed the

maximum permissible sentence for a Class C felony. We address each of his contentions in turn.

# I. Vouching

Desarmo argues that the trial court improperly admitted the testimony of forensic interviewer Sandy Corral. A trial court has broad discretion in ruling on the admissibility of evidence and we will disturb its rulings only if the court abused that discretion. *Hoglund v. State*, 962 N.E.2d 1230, 1237 (Ind. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

Vouching testimony is specifically prohibited under Indiana Evidence Rule 704(b), which states: "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Such testimony is considered an "invasion of the province of the jurors in determining what weight they should place upon a witness's testimony." *Bean v. State*, 15 N.E.3d 12, 18 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

The prohibition on vouching testimony extends to indirect vouching testimony. *Hoglund*, 962 N.E.2d at 1237. Indirect vouching occurs when one witness testifies that another witness is believable, or honest, or exhibits some marker of credibility. *See id.* In the context of child molestation cases, indirect vouching occurs when a witness testifies, for example, that the child is not "prone to exaggerate or fantasize about sexual matters[,]" *id.*, or that the child does not

"exhibit any 'signs or indicators' of coaching[.]" *Sampson v. State*, 38 N.E.3d 985, 991 (Ind. 2015) (emphasis omitted). Such testimony is permitted, if at all, only after the defendant has called the child's credibility into question. *Id.*

[18] Desarmo contends that Sandy Corral's testimony was implicit vouching evidence. He argues that her testimony "taken as a whole, was totally irrelevant to the guilt or innocence of Des[A]rmo." Appellant's Br. p. 11. Desarmo acknowledges that Corral "did not make direct comments on the believability of A.A." *Id.* at 13. His contention "is that the only conceivable relevance for the testimony, was the proposition that Corral was an expert and well-credentialed interviewer and that therefore, the results of her interview were a reliable and believable statement." *Id.* Desarmo asserts that this is sufficient to constitute an "implicit and indirect comment on the believability of A.A." *Id.*

[19] Rule 704(b) restricts what subjects may be covered by testimony. However, it does not restrict who is allowed to testify. Here, Desarmo agrees that Corral did not offer any testimony on the truth of A.A.'s testimony or on any matter relating to A.A.'s credibility generally. Rather, her testimony merely explained where and when A.A. first disclosed the abuse. The background information provided by Corral does not violate of Rule 704(b).

## II. Sufficiency of the Evidence

[20] Desarmo next challenges the sufficiency of the evidence. Our standard of review for challenges to sufficiency of the evidence is well settled. When

reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We do not reweigh the evidence or assess witness credibility. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[21] Desarmo first contends that, because A.A. was unable to identify Desarmo from among the people in the courtroom, the State failed to establish his identity as the person who molested her. Desarmo relies on *Duke v. State*, 298 N.E.2d 453, 455 (Ind. 1973), for the proposition that the evidence is insufficient if the defendant is not the person identified during an in-court identification, and the in-court identification is the only evidence presented on the question of identity.

[22] Desarmo is correct that A.A. identified the wrong person during the in-court identification—she identified counsel for Desarmo's co-defendant. However, the State offered alternative identification evidence. A.A. was able to identify a picture of Desarmo taken closer to the time of the molestations. At the time the crimes against A.A. were committed, Desarmo had long hair, facial hair, and was larger than he was at trial. Two subsequent witnesses, Byatt and Lieutenant Lehman, testified that the picture A.A. identified as Desarmo was a

picture of him and that the picture accurately reflected his appearance at the time A.A. lived with him. Unlike *Duke*, the State presented substantial alternative evidence of identity in this case.[2]

[23] Desarmo next argues that A.A.'s in-court identification was impermissibly suggestive because the only picture A.A. was shown was a picture of Desarmo. Therefore, Desarmo contends that the State was required to show an independent basis for A.A.'s identification of Desarmo in the picture. We begin by noting that the cases Desarmo cites address pre-trial identification processes that are impermissibly suggestive. The concern with an overly suggestive pre-trial identification is that the witness's memory may be tainted by it. *See Cooper v. State*, 359 N.E.2d 532, 534 (Ind. 1977). Therefore, the witness is precluded from offering an in-court identification unless the State can provide evidence of an independent basis for the identification. *Id.* The independent basis test considers "the witness' actual opportunity to observe the accused and such facts as would indicate whether or not the witness could have identified the suspect without the influence of the suggestive procedure." *Id.*

[24] The complained-of identification process here occurred in court, and not pre-trial. Nonetheless, applying the independent basis test, we find ample evidence that A.A. had an independent basis for her identification of Desarmo. A.A.

---

[2] Desarmo further argues that A.A. never said the "Cory in the photograph was the individual who committed the acts of molestation." This is unpersuasive. A.A. identified the photograph as "Cory" and then testified that "Cory" committed multiple acts of molestation.

lived with Desarmo from December 2010 until May 2013. A.A. was forced to perform various sex acts on or with Desarmo during the time she lived with him and she testified that she was facing him during many of these acts—giving her ample time to observe Desarmo. These facts establish sufficient independent basis for A.A.'s identification of Desarmo in the picture.

[25] We conclude that the evidence was sufficient to establish Desarmo's identity and that A.A. had an independent basis, apart from the single picture she was show at the trial, for her identification of the photograph.

## IV. Final Jury Instruction on Conspiracy Count

[26] Desarmo argues that the trial court improperly instructed the jury when it included in Final Instruction Number 2.07 the overt acts contained in the charging information for Count IX, Class A felony conspiracy to commit child molesting. He claims that by presenting the charged elements, the court emphasized particular evidentiary facts.

[27] Instructing the jury lies within the sole discretion of the trial court, and we will not reverse for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law in the case. *Hamilton v. State*, 783 N.E.2d 1266, 1268 (Ind. Ct. App. 2003), *trans. denied*.

[28] Desarmo was charged with conspiracy to commit child molesting as a Class A felony under Indiana Code section 35-41-5-2. Section 35-41-5-2(b) requires the State to "allege and prove" that either the defendant or his alleged conspirator performed an overt act in furtherance of the conspiracy. The pattern jury

instruction used by the judge instructs the trial court to "set out the overt act(s) charged in the information[.]" Indiana Pattern Jury Instructions Criminal, No. 2.07 (3d ed. rev. 2014).

[29] Final Instruction 2.07, as given to the jury, contained most of the overt acts alleged in the charging information. However, the judge omitted some acts contained in the charging information after determining that those acts were not sufficient to constitute an overt act in furtherance of the conspiracy, or where the proof at trial was not sufficient to establish that the act occurred. *See* Tr. p. 546-48. For example, the judge omitted acts involving Desarmo's hand and A.A.'s vagina or anus because no proof was offered for those acts during the trial. The judge struck acts involving the hand of A.A. and the penis of Desarmo because those were charged as Class C felonies. The judge also struck "had A.A. go to their bedroom and/or the living room" because that is not an act, standing alone, that could constitute an overt act in furtherance of a conspiracy to commit child molesting.

[30] The instruction did not add any acts that were not specifically alleged by the State in the charging information. The trial court, with some omissions, was reading the allegations against Desarmo as stated in the charging information, not highlighting evidence in Final Instruction 2.07. Therefore, the trial court did not abuse its discretion.

# III. Sentencing

[31] The trial court sentenced Desarmo to thirty years for Counts VII and VIII. Both parties agree these counts were charged as Class C felonies. Indiana Code section 35-50-2-6 provides that the maximum allowable sentence for a Class C felony is eight years. We therefore remand to the trial court with instructions to revise Desarmo's sentence on Counts VII and VIII in accordance with Indiana Code section 35-50-2-6.

[32] We affirm the trial court in all other respects.

Bailey, J., and Crone, J., concur.