## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 04 2017, 8:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eugene Croffett,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 4, 2017<br><br>Court of Appeals Case No.<br>82A01-1606-CR-1428<br><br>Appeal from the Vanderburgh<br>Circuit Court<br><br>The Honorable Michael J. Cox,<br>Magistrate<br><br>Trial Court Cause No.<br>82C01-1510-F1-5993 |

**Mathias, Judge.**

[1] Following a jury trial in Vanderburgh Circuit Court, Eugene Croffett ("Croffett") was convicted of child molesting as a Level 4 felony and admitted

to being a habitual offender. Croffett appeals and argues that the trial court committed fundamental error by admitting into evidence a handwritten note Croffett composed during a police interrogation. Concluding that the admission of the note did not constitute fundamental error, we affirm.

## Facts and Procedural History

[2] Croffett is the uncle of Arthur Croffett ("Arthur"), who is married to Crystal Croffett ("Crystal"). Arthur and Crystal have four children — two boys and two girls. Their younger daughter is L.C., who was born in 2010, and the older daughter is M.C., who was born in 1999.

[3] On September 26, 2015, Arthur threw a surprise birthday party for Crystal. Croffett was one of the guests to this party. While the adults drank alcohol and played cards, the children were upstairs watching a movie. Croffett drank a considerable amount of alcohol and became intoxicated. Most of the guests left by 10:00 p.m., but Croffett stayed until Arthur went to bed. Arthur told his uncle that he could sleep on the couch.

[4] At approximately midnight, M.C., who had been at a friend's house and decided to spend the night there, came back home to get some clothes. She saw Croffett walking around downstairs by himself. After getting her clothes from upstairs, M.C. came back downstairs, and Croffett told her, "[I]f you need anything, I gotcha." Tr. p. 116. M.C. thought this was an odd statement, and it made her feel uncomfortable.

[5] Later that night, Croffett snuck into L.C.'s room. He rubbed the then five-year-old girl's back, placed his hands inside her clothing, and touched her genitals and anal area.

[6] The next morning, Arthur and his family went out to eat breakfast, but Croffett remained behind. On the way back home, M.C. stated that Croffett was a "creep" for what he had said to her. L.C. then chimed in and stated, "[Y]eah, and your uncle came in my room, and he rubbed my back, and he put his hands where I pee." Tr. pp. 44-45. Arthur returned home and confronted his uncle, who denied having touched the girl.

[7] Crystal eventually reported the incident to the police and was told to take L.C. to a victim's advocacy center to be interviewed. There, L.C. claimed that she was touched by "Uncle Nate." Tr. p. 283. Uncle Nate was the name of another friend of the family. Investigators therefore showed L.C. a photographic line-up of six men, which included photos of both Uncle Nate and Croffett. L.C. identified both men as "Uncle Nate," but immediately identified Croffett as the one who had inappropriately touched her.

[8] In the meantime, Evansville Police Department Detective Brian Turpin ("Detective Turpin") interviewed Croffett at the police station. Detective Turpin read Croffett each of his Miranda rights off of a form and asked if Croffett understood each of these rights. Croffett indicated that he understood. Croffett then signed a waiver of his rights and agreed to speak to the police. Detective Turpin told him that L.C. had accused Croffett of touching her

private parts. Croffett denied this. He admitted that he had drank alcohol and smoked marijuana at the party, and he also stated that he went upstairs at one point in the evening to talk to his nephew Arthur but went back down stairs to sleep on the couch when Arthur told him that he was trying to sleep. Croffett insisted that he had not gone into L.C.'s room.

[9] When confronted with the possibility that his DNA might be in L.C.'s clothing, he maintained his innocence and agreed to have his DNA collected for testing. Croffett also stated that he had drank quite a bit that night and did not remember anything after falling asleep on the couch. Detective Turpin asked Croffett if he was sorry for what happened to L.C., to which Croffett replied, "I don't know what happened to her but you know like I say, I don't remember nothing about that." Tr. p. 269.

[10] Detective Turpin then told Croffett that writing a note apologizing for what he had done might help the family feel better. Still, Croffett stated, "I don't remember nothing." Tr. p. 270. Detective Turpin then stated, "Just do your best and I think that that would really help a lot in letting them know that you're not, you know, calling [L.C.] a liar or anything like that because you know you're sorry for what happened. If you're not sorry for what happened then definitely don't write the letter, alright?" *Id*. Detective Turpin gave Croffett a pad of paper and a pen and left the room. Croffett wrote a note stating, "I'm so sorry what had haping [sic] to you I'm very sorry of that." Appellant's App. p. 137.

On October 1, 2015, the State charged Croffett with Count I, Level 1 felony child molesting, Count II, Level 1 felony child molesting, and Count III, Level 4 felony child molesting. The State later alleged that Croffett was a habitual offender. A jury trial was held on May 11 and 12, 2016. At trial, the State introduced into evidence the note Croffett had written without objection. The jury ultimately found Croffett not guilty on Counts I and II, but guilty on Count III. Croffett then admitted to being a habitual offender. On June 9, 2016, the trial court sentenced Croffett to the advisory term of six years to which the court added a ten-year habitual offender enhancement. Croffett now appeals.

## Discussion and Decision

Croffett claims that the trial court committed fundamental error in the admission of the handwritten note. Questions regarding the admission of evidence are entrusted to the sound discretion of the trial court. *Boatner v. State*, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010). On appeal, we review the trial court's decision only for an abuse of that discretion. *Id.* A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.*

Generally, to preserve a claim of evidentiary error for purposes of appeal, a defendant must make a timely objection to the admission of the evidence at issue. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). "The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors." *Id.* If a defendant fails to properly preserve the

evidentiary issue by failing to object, we will review the trial court's decision only for fundamental error. As explained by our supreme court in *Sampson v. State*:

> The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes procedural default precluding consideration of the issue on appeal. This exception applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. Harm is not shown by the fact that the defendant was ultimately convicted; rather harm is found when error is so prejudicial as to make a fair trial impossible.

38 N.E.3d 985, 992 (Ind. 2015) (citations and internal quotations omitted). This is an exacting standard that Croffett has failed to meet.

[14] The essence of Croffett's argument is that his "confession" in the note was involuntary due to the deceptive interrogation tactics of Detective Turpin. When evaluating a claim that a statement was not given voluntarily,[1] a trial court should consider the totality of the circumstances, including whether there is police coercion; the length, location, and continuity of the interrogation; and

---

[1] If a defendant challenges the voluntariness of a confession under the United States Constitution, the State must prove the statement was voluntarily given by a preponderance of the evidence. *Malloch v. State*, 980 N.E.2d 887, 901 (Ind. Ct. App. 2012) (citing *Pruitt v. State*, 834 N.E.2d 90, 114 (Ind. 2005)), *trans. denied*. The Indiana Constitution, however, requires the State to prove beyond a reasonable doubt that the defendant voluntarily waived his rights and that the confession was voluntarily given. *Id*. Here, Croffett did not challenge the voluntariness of his statement below, and the State was accordingly not put to the task of meeting this burden. Croffett does not explain under which constitution he claims his statement was involuntary. Regardless, we believe that the State presented evidence sufficient to establish the voluntariness of Croffett's statement under either standard.

the maturity, education, physical condition, and mental health of the defendant. *Malloch v. State*, 980 N.E.2d 887, 901 (Ind. Ct. App. 2012), *trans. denied*. On appeal, we do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness. *Id*. We examine the evidence most favorable to the State, together with the reasonable inferences that can be drawn therefrom. *Id*. If there is substantial evidence to support the trial court's conclusion, we will not set it aside. *Id*.

[15] Here, nothing in the record persuades us that Croffett's statement was involuntary. He was interviewed by one detective in an interrogation room. He was not restrained in any way and was allowed to take restroom breaks. He was read his Miranda rights, one at a time, and asked if he understood his rights, which he indicated that he did. He was re-read his Miranda rights at the start of the second session of interrogation. The interviewing detective did not physically threaten Croffett, nor did he use any intimidating body language. Nor were the interviews excessive in duration. Detective Turpin told Croffett that he believed L.C.'s accusations, and repeatedly asked him to confess. But Croffett continued to maintain his innocence.

[16] To be sure, Detective Turpin admitted that he was exaggerating or being deceptive regarding the possibility that Croffett's DNA being found on the victim or her clothing, but this does not render Croffett's statement involuntary. *See Pierce v. State*, 761 N.E.2d 821, 824 (Ind. 2002) (noting that police deception weights against the voluntariness of a confession but is not dispositive and is only one consideration in determining the voluntariness of a statement and that

the police claim that they had a preliminary DNA match for the defendant did not render his confession involuntary). However, even after being told that his DNA would be found on the victim or her clothing, Croffett maintained his innocence and stated that he would not believe such results.

[17] We also cannot ignore that the handwritten note was not a full confession or even an admission that he committed the crime. "A confession must include all essential elements of the crime, whereas an admission merely admits some fact which tends to connect the defendant with the alleged offense." *Parsons v. State,* 166 Ind. App. 152, 155-56, 333 N.E.2d 871, 873 (1975); *accord Knight v. State,* 436 N.E.2d 866, 868 (Ind. Ct. App. 1982). Here, Croffett's note was merely a statement that Croffett was sorry for what happened to L.C. Although this may be somewhat incriminating, it falls short of a full confession or even an admission. Indeed, the State made no mention the note in its closing argument to the jury, whereas Croffett mentioned the note and argued that it was not incriminating because it was not a confession.

[18] Croffett also claims that his lack of education and intelligence weighs against the admission of the statement. However, Croffett indicated that he understood his Miranda rights and waived them. Even given his limited education, he withstood the police interrogation without ever confessing, even in the face of exaggerated claims regarding the possibility of DNA evidence. We also cannot ignore that this was not Croffett's first run-in with the criminal justice system. He has a long criminal history and admitted to being a habitual offender. Thus, he was not a naive first-time offender unfamiliar with police tactics.

In short, nothing in the record convinces us that the admission of a marginally incriminating handwritten note deprived Croffett of due process or made a fair trial impossible.

Affirmed.

Baker, J., and Pyle, J., concur.