# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 05 2017, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Steven H. Schutte
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Douglas Johnson,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

July 5, 2017

Court of Appeals Case No.
92A04-1703-PC-436

Appeal from the Whitley Circuit Court

The Honorable J. Brad Voelz, Special Judge

Trial Court Cause No.
92C01-1109-PC-91

**Baker, Judge.**

Douglas Johnson appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erroneously determined that he did not receive the ineffective assistance of trial counsel. Finding no error, we affirm.

## Facts

The underlying facts in this case, as described in Johnson's direct appeal, are as follows:

> H.C. and J.J. are extended relatives of Johnson's wife. Between February 2007 and August 2008, H.C, then age fourteen to sixteen, stayed overnight at Johnson's home. One night, she woke up and found that she was naked below the waist and that Johnson was touching her inappropriately. After that, Johnson allegedly had intercourse with her and told her not to tell anyone.
>
> At Christmastime 2008, Johnson and his wife were babysitting eight-year-old J.J. When J.J. asked Johnson for a drink, he took her into a bedroom, pulled down her pants, fondled her, and placed his finger inside her vagina. He threatened to hurt her if she told anyone.
>
> On March 12, 2009, H.C. told her school counselor that Johnson had molested her, and the police began an investigation. On March 14, 2009, J.J.'s parents learned of H.C.'s allegations, and J.J.'s father asked J.J. if anything "odd" or "weird" had ever occurred at Johnson's home. Tr. at 59. J.J. began to cry hysterically, stating that Johnson had inserted his finger into her vagina when he was babysitting her. That day, J.J.'s parents notified the police. J.J. later indicated to Department of Child Services caseworker Jodie Hively that it was H.C.'s disclosures about Johnson that had prompted her to disclose her own molestation. *Id.* at 133. She testified that she was "scared" to tell

anyone but that she was "happy that [she] could get it out of [her] system." *Id.* at 73.

*Johnson v. State*, No. 92A03-1004-CR-222, *1 (Ind. Ct. App. Jan. 14, 2011), *trans. denied*.

[3] The State charged Johnson with Class A and Class C felony child molesting for the offenses related to J.J. and with Class B and Class C felony sexual misconduct with a minor for the offenses related to H.C. Johnson's jury trial took place on March 3-5, 2010. At the close of the trial, the jury found Johnson not guilty of Class B felony sexual misconduct with a minor charge and guilty of the remaining three charges. The trial court merged the Class C felony child molesting conviction into the Class A felony child molesting conviction and, on March 29, 2010, sentenced Johnson to concurrent terms of thirty-six years for Class A felony child molesting and six years for Class C felony sexual misconduct with a minor. Johnson pursued a direct appeal. This Court affirmed and our Supreme Court denied transfer. *Id.*

[4] On September 14, 2011, Johnson filed a petition for post-conviction relief; on March 7, 2016, he filed an amended petition. Among other things, Johnson argued that he received the ineffective assistance of trial counsel. The post-conviction court held an evidentiary hearing on August 4, 2016, and trial counsel testified at that hearing. On February 6, 2017, the post-conviction court denied Johnson's petition. Johnson now appeals.

# Discussion and Decision

## I.  Standard of Review

The general rules regarding the review of a ruling on a petition for post-conviction relief are well established:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.*  To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.  *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993).  Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6).  Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).

A claim of ineffective assistance of trial counsel requires a showing that:  (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012).

## II. Assistance of Trial Counsel

[7]     Johnson raises three arguments with respect to the performance of trial counsel at trial: (1) trial counsel was ineffective for deciding not to object to the admission into evidence of the victims' recorded pretrial interviews; (2) he was ineffective for failing to object to vouching and drumbeat testimony; and (3) the cumulative impact of counsel's allegedly deficient performance prejudiced Johnson.

## A. Victims' Recorded Interviews

[8]     At Johnson's trial, the State introduced into evidence the recorded interviews of H.C. and J.J. that were conducted by Columbia City Police Detective Tim Longenbaugh and Department of Child Services investigator Jodie Hively. H.C., J.J., Detective Longenbaugh, and Hively also testified during the trial. According to Johnson, trial counsel should have objected to this evidence

because it was inadmissible pursuant to hearsay rules and Indiana Code section 35-37-4-6.[1]

[9] It is undeniable that these videotaped statements were inadmissible. At the post-conviction hearing, however, counsel testified that as a matter of strategy, he preferred that the statements be introduced into evidence. He wanted the jury to see those interviews, as he believed they showed that the girls were led and prodded by the interviewers and had made inconsistent statements. In counsel's view, the recorded interviews could be used to attack the credibility and reliability of the victims' trial testimony.

[10] Our Supreme Court has explained that "[f]ew points of law are as clearly established as the principal that '[t]actical or strategic decisions will not support a claim of ineffective assistance.'" *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (quoting *Sparks v. State*, 499 N.E.2d 738, 739 (Ind. 1986)). Even the best criminal defense attorneys may disagree on the best or most effective strategy in a particular case; consequently, courts must give great deference to counsel's strategic decisions. *Id.* Therefore, we will not second-guess trial strategy unless it is so deficient or unreasonable as to fall outside of the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

---

[1] This statute provides that a statement or videotape made by a "protected person" is admissible under certain circumstances even if it would otherwise be excluded as hearsay. "Protected person" includes only children under the age of fourteen, I.C. § 35-37-4-6(c), meaning that this statute would not apply to seventeen-year-old H.C. And a foundation must be laid at a separate hearing for the admission of the videotape. I.C. § 35-37-4-6(e). Here, no such hearing occurred.

[11]     Johnson directs our attention to authority establishing that we should not credit a strategic decision that "resembles more a *post hoc* rationalization of counsel's conduct than an accurate description of their deliberations prior to sentencing." *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003). The record belies Johnson's contention that trial counsel's testimony was a post hoc rationalization:

- During closing argument, counsel told the jurors that to evaluate credibility, they needed to examine what was said all along rather than focusing solely on what was said at trial. Trial Tr. p. 204.
- He told the jurors to listen to the interviews, noting that "[s]ome people might say, [counsel], why are you putting those [videos] into evidence? Because you [the jury] gotta get the whole context folks of what's going on here." *Id.* at 206.
- Trial counsel then spent the majority of his closing argument highlighting things that were said and done in the videos to argue that the victims were not credible:
  - He pointed to a statement made by H.C. during her interview that the school resource officer "kind of bribed me by buying pop and some other things" to try "to get me to talk." *Id.* at 135.
  - He pointed to a statement made by J.J. during her interview that she had been told by her father that Johnson had "done it to somebody else." *Id.* at 204-06.
  - Counsel highlighted that H.C. was resistant to saying anything during her interviews, that she remained silent when asked to show where Johnson touched her, that she was subject to leading questions and prodding, and that the interviewers asked questions assuming something had happened and were the first to make suggestions that H.C. ultimately agreed with or never actually confirmed. *Id.* at 206-16.
  - He pointed to inconsistencies in H.C.'s statements regarding details such as whether clothes were on or off, or where Johnson's hands were. *Id.* at 204-05, 208.

- He also pointed to inconsistencies in J.J.'s statements about which finger Johnson used to penetrate her vagina and about whether or not Johnson had closed the bedroom door. *Id.* at 205, 217-19.
- Trial counsel argued that a "seed" was planted in J.J.'s head when she was told about what H.C. had said, that her statements during the interview sounded programmed, and that it was Hively who introduced certain ideas during the interview. *Id.* at 211, 216-19.

It is readily apparent that counsel did, in fact, make a strategic decision to highlight these videotaped statements to the jury. He wanted the jurors to see those videos so that he could use them to form his argument that the victims' claims should not be believed. This was not a post hoc rationalization.

[12] Johnson also argues that, even if this was not a post hoc rationalization, it was a strategy that was unreasonable as a matter of law. We disagree. It is a reasonable trial strategy to admit a victim's pretrial statements into evidence to use those statements to attack the victim's credibility. *See Hinesley v. State*, 999 N.E.2d 975, 982-84 (Ind. Ct. App. 2013) (holding that it was a reasonable strategic decision to allow admission of pretrial statements where counsel wanted to use those statements to show the molestation accusations were unreliable); *Curtis v. State*, 905 N.E.2d 410, 414-15 (Ind. Ct. App. 2009) (same). In our view, trial counsel's strategy of attempting to undercut the reliability of the victims was eminently reasonable. Indeed, the jury acquitted Johnson of the second most serious charge he faced, suggesting that counsel's strategy achieved some success. Under these circumstances, we find that the post-conviction court did not err by concluding that Johnson did not receive the

ineffective assistance of trial counsel for the failure to object to the admission of these videos.

## B. Vouching and Drumbeat Testimony

[13] Next, Johnson argues that trial counsel was ineffective for not objecting to alleged "vouching" and "drumbeat repetition" evidence. This is yet another area where counsel explained his strategy as a trial attorney. He told the post-conviction court that he decides whether to object to testimony as a strategic matter during the course of a trial, depending on whether the testimony is really hearsay, whether it will hurt his case or is important enough to warrant an objection, and whether he thinks he can use it to help the argument he intends to make. PCR Tr. p. 14-18, 23-24. Trial counsel saves objections for things that truly matter, and if the witness is relaying the general nature of the accusation without going into detail, he generally believes that it is not worth an objection. *Id.* at 17-18.

[14] The so-called drumbeat evidence consists of the following:

- Detective Longenbaugh testified that, during his interview with H.C., "I had just come out and ask[ed] her at one point if [Johnson] had sex with her and she told me yes." Trial Tr. p. 82.
- Johnson asserts that Hively repeated H.C.'s and J.J.'s stories, but a review of her testimony shows that she was not asked by the State and did not testify as to what either child told her regarding Johnson's sexual activity with them.
- J.J.'s father testified that when he asked J.J. whether anything odd had happened at Johnson's house, J.J. began crying and said that Johnson had "touched her on her private area." *Id.* at 59. Her mother testified

that J.J. was crying and said that Johnson had "touched her wrong." *Id.* at 52.

Initially, we note that in our view, this limited collective testimony does not constitute improper drumbeat evidence. *See Norris v. State*, 53 N.E.3d 512, 525-26 (Ind. Ct. App. 2016) (noting that under certain circumstances, a drumbeat repetition of victim's statements can prejudice a jury). But even if it did, this evidence is precisely the type of evidence to which trial counsel explained he strategically refrains from objecting. We cannot conclude that this evidence is so voluminous and prejudicial that this strategic decision was unreasonable as a matter of law, and we decline to second-guess counsel in this regard.

[15]     The so-called vouching evidence consists of the following:

- Hively and Detective Longenbaugh each testified that the detective's attempt to interview H.C. had not gone well because H.C. did not want to talk to him. They further testified that it had "gone better" when Hively interviewed H.C. because she was more willing to open up, though she remained reluctant to talk. *Id.* at 81-82, 84-85, 122-23.
- Hively was asked whether J.J. was "emotionally appropriate" during the interview. Hively responded, "I guess I don't like that word. I don't think there is an appropriate response for a child that's been abused." *Id.* at 121.
- Hively was asked whether J.J. was afraid to correct her during the interview. Hively answered, "She would correct me if I got something wrong, because part of [the child interview process] is when a child says something, we repeat it and if I didn't get it right, then she would correct me." *Id.* at 120. She explained that this process was "important" because "it shows that we're not leading the child[,] that she has no fear of saying, hey, this is wrong, that they're being truthful during an interview." *Id.*

At the time of the trial, Indiana allowed "some form of vouching of child witness testimony in child molestation cases." *Hoglund v. State*, 962 N.E.2d 1230, 1235 (Ind. 2012).[2] Specifically, at that time, witnesses were permitted to provide opinions that would "facilitate an original credibility assessment of the child by the trier of fact, so long as they do not take the direct form of 'I believe the child's story' or 'In my opinion the child is telling the truth.'" *Lawrence v. State*, 464 N.E.2d 923, 925 (Ind. 1984), *overruled by Hoglund*.

[16]    With respect to the first statement, we cannot conclude that testimony explaining why H.C. was interviewed twice—because she would not talk to one interviewer but opened up to a second interviewer—was improper vouching. There was no suggestion that the second interview went better because H.C. told the truth the second time; instead, it went better because she was willing to engage with the interviewer and answer questions. Consequently, any objection made by trial counsel would have been overruled.

[17]    With respect to the second statement, Hively did not say that J.J. was abused or that she believed J.J.'s statement. Instead, she was challenging the premise of the question and explaining that generally, one cannot draw any conclusions about whether children have been abused based on their emotional behavior

---

[2] Since that time, Indiana's caselaw regarding vouching testimony in child molestation cases has evolved, but we must judge counsel's performance on the basis of the law as it existed at the time of his representation of Johnson. *E.g.*, *Harrison v. State*, 707 N.E.2d 767, 776 (Ind. 1999) (holding that an attorney will not be deemed ineffective for failing to anticipate a change in the existing law).

during an interview. As this was not vouching testimony, had counsel objected, it would have been overruled.

[18] The third statement comes the closest to improper vouching testimony. Under the circumstances of this case, however, it would have been admissible in any event. As noted above, the primary defense strategy in this case focused on questioning the credibility of the victims and arguing that the children had been led by adults into making these accusations. Having utilized this strategy, the defense opened the door to testimony that Hively had not, in fact, led J.J. into making these accusations. *Sampson v. State*, 38 N.E.3d 985, 991-92 (Ind. 2015) (testimony regarding indications of coaching of a child molestation victim is inadmissible unless defense opens the door by raising questions of victim credibility by suggesting victim was led or coached by others).

[19] Johnson argues that he made only a "general impeachment" of the witnesses' credibility, which did not open the door to Hively's testimony. But counsel argued, among other things, that H.C. was bribed to make statements, that both children were asked leading questions by various adults, and that a seed was planted in J.J.'s mind when her father and others made various statements. This strategy goes beyond a general impeachment and clearly opened the door to Hively's testimony that, during the interview, J.J. would correct her and she did not lead the child into making accusations. Consequently, had trial counsel objected to this testimony, it would have been overruled.

Finally, we note that even if any of this testimony constituted improper vouching, Johnson cannot establish prejudice given the overwhelming evidence of his guilt. Two female children, who had no opportunity to conspire together and had no motive to lie, independently accused Johnson of engaging in sexual acts with them while they were in his care. Furthermore, Johnson agreed to undertake a polygraph test, which indicated deception and was admitted into evidence. The challenged testimony is brief in nature, was not unduly emphasized during the trial, and was not even referenced by the prosecutor during closing argument. Under these circumstances, we cannot conclude that there was a reasonable probability the result of the trial would have been different had this testimony been excluded.

## C. Cumulative Impact

Finally, Johnson contends that the cumulative impact of counsel's errors is prejudicial and, had counsel conducted the trial in a different manner, there is a reasonable probability that Johnson would have been acquitted. *See Smith v. State*, 511 N.E.2d 1042, 1046 (Ind. 1987) (holding that it is proper for the court to consider the cumulative impact of counsel's errors). Here, we have not found that trial counsel committed any errors. Instead, it appears to us that trial counsel defended Johnson vigorously and intelligently, especially given the weight of evidence against Johnson—including the polygraph examination, with which he agreed to participate before counsel was his attorney. Notwithstanding the evidence against Johnson, trial counsel was able to convince the jurors to acquit his client of the second most serious charge he

faced. In short, the post-conviction court did not err by finding that Johnson did not receive the ineffective assistance of trial counsel.

[22] The judgment of the post-conviction court is affirmed.

Barnes, J., and Crone, J., concur.