**Kerry GREENWELL, Appellant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 82S00–9105–CR–356.**

Supreme Court of Indiana.

March 31, 1992.

David M. Shaw, Mitchell Staser & Shaw, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he was sentenced to sixty (60) years.

The facts are: On Tuesday, August 1, 1989, the nude body of Debbie Thompson was found on the living room floor of her apartment in Evansville, Indiana. The condition and position of the body strongly suggested a sexual assault; it subsequently was discovered she had been strangled to death with "something flat, either a forearm or possibly a crook of an elbow" and had suffered numerous stab wounds, both pre- and post-mortem, including one to the vagina. It also was discovered that certain personal possessions were missing from the apartment, including a stereo sound system, a VCR, a microwave oven, and a jewelry box.

The victim's husband had left for two weeks of annual training with the Indiana National Guard the previous Saturday, and that evening Debbie was visited in her apartment by appellant and his girl friend Kenya Mattingly who lived together a half-block away. Kenya was hearing-impaired and dependent primarily upon sign language to communicate with others. When appellant and Debbie began conversing through speech, Kenya, noting the absence of Debbie's husband, concluded Debbie was attempting to "date" appellant and in an outburst of frustration initiated a confrontation with Debbie during which she struck her on the head several times with a plastic table leg.

Kenya testified that at some point, appellant was drawn into the affray and he too began assaulting the victim, performing cunnilingus on her, stabbing her, ultimately strangling her to death with his forearm and ejaculating between her legs. Appellant and Kenya then went to their own apartment where appellant changed out of his bloody clothes. Then they returned to the victim's residence where they removed to their own apartment the stereo, jewelry box, and other items. When questioned by police later that month, both appellant and Kenya denied knowing anything about the

murder. That fall, they moved to Perry County.

In March of 1990, Kenya was in the Perry County Jail on a battery charge when she contacted the Evansville Police with information that appellant had committed the murder of Debbie Thompson and taken the missing items to his apartment. She told police where the property could be located. Some of the stolen items were recovered from the locations reported by Kenya. Kenya continued to deny any involvement. In April of 1990, when Kenya's palm print was identified on the plastic table leg found next to Debbie's body, police again interviewed her and heard six different versions of events on the night of the murder, each version implicating appellant as the killer but with significant variations as to, *e.g.*, the manner of death. By her final account to police, death had been by stabbing; at appellant's trial, she testified it had been by strangulation. Kenya was convicted of murder at her own trial in August of 1990.

■ Appellant contends the trial court erred in excluding evidence of Kenya's reputation for having a violent temperament. He made offers to prove her reputation for violence, including the testimony of Peter Swaim, Assistant Commander of the Vanderburgh County Jail, who testified in the jury's absence that while incarcerated under his supervision, Kenya's violent outbursts, fighting episodes, and her inability to get along with other female inmates had resulted in several temporary periods of, and finally her permanent, segregation from the rest of the inmate population.

Appellant also offered the testimony of Denise Elvestrom, Kenya's child welfare caseworker from age 13 to 17, who testified Kenya was moved through a series of foster home placements due to her "aggressive or violent outbursts of temper." In conjunction with evidence of multiple variations in Kenya's account of the crime and her conviction for murdering the victim, appellant offered this testimony demonstrating Kenya's reputation for being prone to violence in order to convince the jury that she, and not appellant, in fact had

committed the killing. The State objected to its admission and the trial court sustained that objection.

However, no reversible error occurred. The evidence brought out during cross-examination of Kenya leads us to conclude that while appellant was unable to introduce the evidence of Kenya's reputation for violence, he was able to exploit the fact she had been convicted of the victim's murder and to elicit her admissions that she has a short temper, can become very angry, and that she "blew up" at the victim the night of the murder and hit her with a table leg.

In view of these admissions by Kenya, the probative force of the testimony offered as to her reputation pales by comparison, at most would have been merely cumulative, and the prejudice incurred by its exclusion virtually was nil. An affirmative showing of error prejudicial to the appellant's substantial rights is required for reversal. *Sharp v. State* (1989), Ind., 534 N.E.2d 708, *cert. denied* 494 U.S. 1031, 110 S.Ct. 1481, 108 L.Ed.2d 617. No reversible error thus has been presented here.

■ Appellant contends the trial court erred in excluding evidence that prior to her murder, the victim had been threatened by Kenya. Appellant made an offer of proof consisting of the testimony of Aaron Market, the victim's 14–year–old son, who testified that two summers before, as he was walking home from the grocery store with his mother, "Kenya walked up and started talking to her ... and after she left, mom told me about all the things that she had done to her and stuff like that." In response to the State's hearsay objection, the trial court excluded Aaron's testimony. Appellant cites, *inter alia, Lock v. State* (1991), Ind., 567 N.E.2d 1155 and *Drummond v. State* (1984), Ind., 467 N.E.2d 742 for the proposition that a murder victim's hearsay descriptions of communications, relationships, threats, and assaults are admissible.

As with the reputation evidence discussed above, however, Aaron's testimony is too lacking in primacy and probative

force for its exclusion to be reversible error. *See Sharp, supra.*

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.