## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 31 2018, 7:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Kelly A. Loy
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Leobardo Mercado,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 31, 2018<br><br>Court of Appeals Case No.<br>18A-CR-1280<br><br>Appeal from the<br>Elkhart Superior Court<br><br>The Honorable<br>Teresa L. Cataldo, Judge<br><br>Trial Court Cause No.<br>20D03-1510-FA-23 |

**Kirsch, Judge.**

Leobardo Mercado ("Mercado") appeals his convictions and sentence for Class A felony attempted child molesting[1] and Level 1 felony child molesting.[2] He raises four issues, which we restate as follows:

I.   Whether the trial court denied Mercado's constitutional rights to present a defense and cross examine witnesses when it denied his request to ask the victim's parents about their immigration status and denied his request to submit his bank records into evidence;

II.   Whether the trial court abused its discretion when it allowed the victim's step-father to testify about the victim's reputation for truthfulness, and whether it committed fundamental error in allowing the victim's mother to testify about the victim's reputation for truthfulness; and

III.   Whether Mercado's aggregate sentence of eighty years, with seventy years executed, is inappropriate.

We affirm in part and reverse in part.

## Facts and Procedural History

M.F., who was born in September of 2000, lived with her mother Laura ("Mother"), step-father Francisco ("Francisco") (collectively "parents"), and her two younger siblings in Elkhart, Indiana and had lived there since she moved from Mexico at age six or seven. *Tr. Vol. II* at 55-58, 61, 107. Mother's

---

[1] *See* Ind. Code § 35-42-4-3(a)(1) (2007).

[2] *See* Ind. Code § 35-42-4-3(a)(1) (2014).

sister Beatriz ("Beatriz") lived in Chicago with her husband Mercado at this time, and M.F. referred to Mercado as "Uncle." *Id.* at 59-61, 87, 144-45. Over the years, Mercado, Beatriz, and their children would visit M.F. and her family in Elkhart. They would stay in Mother's and Francisco's apartment during holidays, summer vacations, and for M.F.'s birthdays. *Id.* at 99, 145, 169, 220. Sometimes, Mercado and Beatriz would pick up M.F. in Elkhart and bring her to Chicago to spend time with them. *Id.* at 99, 110, 145.

[6] Mercado began grooming M.F. at an early age. He and Beatriz treated M.F. differently than her siblings. They paid more attention to her, took her places that they did not take the other children, and bought her gifts that they would not buy the other children. *Id.* at 148, 169; *Tr. Vol. III* at 48. When Mercado and his family visited M.F. and her family, Mercado would reach under M.F.'s underwear to touch her breasts and to digitally penetrate her vagina. *Tr. Vol. II* at 83-85, 100, 105-106

[7] Mercado and his family visited M.F. and her family to celebrate M.F.'s fourteenth birthday. *Id.* at 86, 113-14, 135, 220. One evening, the family, including Mercado and M.F., were watching television in the living room. *Id.* at 89. M.F. fell asleep on the couch, and she awoke to find Mercado kneeling beside her and touching her. *Id.* at 89-90, 98. M.F. tried to get up and Mercado asked where she was going. *Id.* at 91. M.F. told him she wanted to go upstairs, but Mercado told her to not leave and held her down on the couch. *Id.* As M.F. tried to push him away, Mercado put one hand under her shirt and started

moving his hand toward her breasts and put his other hand down her pants, rubbed her vagina, and penetrated it with his fingers. *Id.* at 88-92, 114.

[8] Mercado told M.F. not to tell anyone, saying no one would believe her because he was an adult, and she was just a child. *Id.* at 78-79, 98. Mercado also told M.F. that if she told others what Mercado had done, M.F. would never see Beatriz again, which M.F. interpreted as a threat to Beatriz. *Id.* at 117.

[9] After she turned fourteen, M.F. began first communion classes at her family's Catholic parish. *Id*. at 74-75, 172, 229-31. Before M.F. could take her first communion, she was required to confess to her priest. *Id.* at 74-77. During her confession, M.F. told the priest that she thought she was a bad daughter because her uncle had touched her inappropriately. *Id.* at 78. The priest encouraged M.F. to tell her parents. *Id.*

[10] Later that week, M.F. was in the dining room with Mother talking about selecting godparents for her first communion, and her mother suggested Beatriz and Mercado; M.F. began to cry. *Id.* at 78-79, 151. M.F. explained that Mercado had been touching her inappropriately. *Id.* at 150. Her parents took her to the police to make a report. *Id.* at 80, 175.

[11] The State charged Mercado with two counts of child molesting under Indiana Code section 35-42-4-3(a)(1), one as a Class A felony for an offense that

occurred before July 1, 2014, and one as a Level 1 felony, for an offense that occurred after July 1, 2014. *Appellant's Conf. App. Vol II* at 194.

[12] The State later filed a motion in limine to prevent Mercado from asking the parents at trial about the family's immigration status, including whether they had consulted an immigration attorney before the allegations against Mercado came to light, and whether M.F. fabricated the allegations so that she and her family could obtain a "U-Visa,"[3] a type of visa that can prevent an undocumented person from being deported if they are a victim of certain crimes and if they help law enforcement investigate the crime. *Id.* at 148-49. Mercado responded that he only intended to ask whether M.F. or her family consulted an immigration attorney either before or during the pendency of the charges - "it's that simple." *Tr. Vol II* at 9. The trial court decided to "preliminarily keep it out" and would re-address the issue if "the door is opened or I feel it is appropriate, then it will be addressed at that time." *Id.* at 13.

[13] Mercado proceeded to a jury trial, and in his opening statement, his counsel challenged M.F.'s truthfulness:

> Good morning. You just heard that M.F. is a Catholic. As a Catholic, you know 'thou shall not bear false witness against thy neighbor.'

---

[3] *See* 8 C.F.R. § 214.14 (2013).

> That's what this case is about. This case is about a young lady bearing false witness against her uncle, Leobardo Mercado, turning his life upside down with these false accusations.

*Id.* at 52. Later during opening argument, Mercado's counsel emphasized that the State's case rested solely on M.F.'s testimony: "All they have is her word, her word." *Id.* at 54.

[14]  Both Francisco and Mother testified through a Spanish-speaking translator. The State asked Francisco, "based on your knowledge of [M.F.] and having raised her, tell us about her reputation for honesty." *Id.* at 155. Before Francisco could respond, defense counsel objected, stating, "Judge, we're getting into character reference here. Her reputation for truthfulness; she's already testified." *Id.* at 156. The State argued this testimony was admissible under Indiana Evidence Rule 608(a) because the defense counsel had challenged M.F.'s truthfulness in his opening statement and during cross examination. *Id.* The trial court agreed with the State and overruled Mercado's objection. The State then rephrased its question, asking Francisco, "How would you describe [M.F.'s] reputation for honesty?" *Id.* at 157. Francisco responded, "Good. Good because she trusts a lot in us and would always tell us things and wasn't one to keep secrets from us." *Id.* at 157. Mercado did not object. The State followed with a question about whether M.F. was the type of child that would lie to avoid trouble, asking, "Was she the type to do that?" *Id.* at 158. Francisco answered, "No. I don't recall her

ever being that way." *Id*. Again, Mercado did not object. During Mother's testimony, the State asked her to describe M.F.'s character for truthfulness. *Id*. at 166. Mother responded that M.F. was "very sincere. She doesn't know how to lie." *Id*. Mercado did not object.

[15] Before Mercado took the stand, his lawyer notified the trial court that he had just received a copy of Mercado's bank statement, which listed bank transactions dating to the last half of September of 2014, around the time of M.F.'s fourteenth birthday. *Id*. at 246. Although the trial court judge, the prosecutor, and Mercado's counsel discussed the bank records at length, the defense eventually declined to introduce the records as evidence. *Tr. Vol. III* at 2-5.

[16] During the trial, the State requested to amend Count I to attempted child molesting. *Tr. Vol. II* at 240. The trial court granted the request. *Id.* at 243. The jury returned guilty verdicts on both counts, attempted child molesting (Count I) and child molesting (Count II). *Tr. Vol. III* at 100.

[17] At the sentencing hearing, Mercado presented thirty letters of support from a priest, co-workers, friends, family members, and his bail bondsman. *Appellant's Conf. App. Vol. II* at 34-66. Mercado also presented testimony from his wife, Beatriz, and a friend. *Tr. Vol. III* at 109-17. Regarding Count I, the trial court found, *inter alia*: 1) M.F. was less than twelve years old; 2) the molesting began when she was very young and continued until before her fourteenth birthday; 3)

there were allegations of other occurrences that did not result in charges; 4) the molesting was painful; 5) Mercado secured M.F.'s silence by threatening her; 6) Mercado groomed M.F.; and 6) Mercado exploited a position of trust. *Id.* at 122-25. As mitigating factors, the trial court cited the character letters and the testimony of two character witnesses at the sentencing hearing. *Id.* at 125. The trial court sentenced Mercado to forty years on each count to run consecutively, with 10 years suspended to probation. *Id.* at 126.

## Discussion and Decision

[18] "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Kubsch v. State,* 784 N.E.2d 905, 923-24 (Ind. 2003) (quoting *Crane v. Kentucky,* 476 U.S. 683, 690 (1986)). "When competent, reliable evidence is excluded that is central to the defendant's case, this right is abridged." *Hyser v. State,* 996 N.E.2d 443, 448 (Ind. Ct. App. 2013) (citing *Crane,* 476 U.S. at 690). Exposing a witness's motivation in testifying is an important function of cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986).

[19] While a defendant's right to present a defense "is of the utmost importance, it is not absolute." *Marley v. State*, 747 N.E.2d 1123, 1132 (Ind. 2001). "The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of

evidence." *Taylor v. Illinois,* 484 U.S. 400, 410 (1988). Evidentiary rulings are entrusted to the discretion of the trial court. *Collins v. State,* 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* However, when an evidentiary claim raises a constitutional issue, the standard of review is de novo. *Jones v. State,* 982 N.E.2d 417, 421-22 (Ind. Ct. App. 2013), *trans. denied.*

## I. Right to Present a Defense and to Cross Examine

[20] Mercado argues that the trial court denied his constitutional rights to cross examine witnesses and to present a defense by: 1) ruling that Mercado could not question M.F.'s parents about their immigration status; and 2) its purported ruling that allegedly barred Mercado from introducing his bank account statements.

[21] Mercado describes his defense as "the proposition that M.F.'s parents had concocted this scheme so that they could resolve immigration issues." *Appellant's Br.* at 10. Without establishing that the family was actually at risk for deportation, Mercado's theory was that the family could reduce the risk of removal by obtaining U-Visas. Mercado contends this gave Mother and Francisco a motive to get M.F. to fabricate a story that Mercado molested her. Thus, Mercado claims it was essential for him to ask Mother and Francisco about the family's immigration status, and specifically about U-Visas, because it would reveal a potential motive to persuade M.F. to lie. Thus, Mercado

contends, when the trial court barred him from asking immigration-related questions, it prevented him from bolstering his defense - that M.F. had lied about the allegations - and this restriction on his questioning undermined his right to present a defense.

[22] As to the bank statements, Mercado contends that even if he did commit Count II, the bank records were vital to proving that he could have committed the offense only after M.F. had turned fourteen years old, which would have prevented the State from charging Count II as anything more than Level 4 felony, which carries a maximum sentence of only twelve years. Mercado explains that the bank records would show toll charges in Portage, Indiana on September 23, 2014, six days after M.F.'s birthday, which would have been incurred on Mercado's return trip to Chicago from Elkhart.

[23] Here, the trial court's rulings did not violate Mercado's right to cross-examine or his right to present a defense. As to the evidence regarding the family's immigration status, Mercado argued for the admission of this evidence only during the hearing on the State's motion in limine, where the trial court ruled that it would preliminarily keep such evidence out but would revisit the issue depending on whether the State opened the door or some other reason that justified taking another look at the issue. *Tr. Vol. II* at 12-13. During trial, Mercado did not tender this evidence or argue for its admission. Thus, the only ruling on the immigration status of the family occurred during the hearing on State's motion in limine. A "ruling on a motion in limine is not a final ruling on the admissibility of evidence; it thus is not assignable as error standing

alone." *Mason v. State*, 539 N.E.2d 468, 470 (Ind. 1989). To preserve a ruling on a motion in limine, "a party must contemporaneously reassert the party's objection at trial so as to allow the trial court an opportunity to make a final ruling on the matter in the proper context." *Vehorn v. State*, 717 N.E.2d 869, 872 (Ind. 1999). Because Mercado did not raise this evidentiary issue during the trial, he has failed to present a properly preserved issue that we may review on appeal.

[24] Likewise, the trial court's ruling that the bank records were inadmissible did not deny Mercado's right to cross examine or present a defense. Although the trial court, the state, and Mercado discussed the records at length, Mercado eventually declined to introduce the records as evidence. *Tr. Vol. III* at 2-5. Therefore, there is no ruling for us to review on appeal.

## II. Reputation Evidence

[25] Mercado contends that the trial court abused its discretion when it admitted Francisco's statement regarding M.F.'s reputation for honesty, where Francisco, when asked about M.F.'s reputation for truthfulness, stated, "Good. Good because she trusts a lot in us and would always tell us things and wasn't one to keep secrets from us." *Id.* at 157. Mercado did not object to this testimony and does not argue here that admission of this testimony was fundamental error. Even so, Mercado argues that the trial court should have excluded this testimony because the State did not establish the proper foundation. Mercado also argues that the trial court committed fundamental

error in admitting what he characterizes as "vouching" when Mother testified that M.F. "doesn't know how to lie." *Id.* at 166.

[26] The State contends that Francisco's statement was admissible because he opened the door to the testimony by saying, during opening argument, that M.F. was "bearing false witness" against Mercado and by cross-examining her about the accuracy of her memory about when the molestations occurred. *Id.* at 52. As to Mother's testimony that M.F. "doesn't know how to lie," the State denies that this amounts to fundamental error. *Id.* at 166.

[27] Indiana Evidence Rule 608(a) provides:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

A reputation is not "attacked" by "[s]imple contradiction of a witness . . . ." 12 Robert L. Miller, Jr., Indiana Practice, Indiana Evidence 876 (4th ed. 2016).

[28] "Opening the door refers to the principle that where one party introduces *evidence* of a particular fact, the opposing party is entitled to introduce evidence in explanation or rebuttal thereof, even though the rebuttal evidence otherwise would have been inadmissible." *Sampson v. State*, 38 N.E.3d 985, 992 n.4 (Ind. 2015) (emphasis added). "An opening statement is not evidence to be

considered by the jury." *Doe v. State*, 451 N.E.2d 1096, 1099 (Ind. Ct. App. 1983).

[29] When testifying about a person's reputation for truthfulness, the proponent of the reputation evidence must identify a readily definable community that has an adequate basis to form an opinion and that the person testifying to the person's reputation must have sufficient contact with that community to qualify as knowledgeable of the general reputation of the person whose character is attacked or supported. *Bowles v. State*, 737 N.E.2d 1150, 1153 (Ind. 2000) and *Norton v. State*, 785 N.E.2d 625, 629-30 (Ind. Ct. App. 2003).

[30] Under Indiana Evidence Rule 704(b), "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; *whether a witness has testified truthfully*; or legal conclusions." (Emphasis added). Such vouching invades the province of the jurors to determining what weight they should place upon a witness's testimony. *Alvarez-Madrigal v. State*, 71 N.E.3d 887, 892 (Ind. Ct. App. 2017), *trans. denied*. This rule only prohibits a witness from testifying about whether a witness *has testified* truthfully. *Halliburton v. State*, 1 N.E.3d 670, 680-81 (Ind. 2013).

[31] Here, we disagree with the State's contention that Mercado opened the door to Francisco's testimony about M.F.'s reputation for truthfulness. Mercado's opening statement did not constitute "evidence" challenging M.F.'s reputation; indeed, the trial court instructed the jury to not consider the opening statements as evidence. *Tr. Vol. II* at 41-42. Likewise, Mercado's cross-examination of

M.F. did not introduce evidence that challenged M.F.'s truthfulness but merely questioned the accuracy of her memory concerning when the molestation occurred. *See Sampson*, 38 N.E.3d at 992 n.4; *Doe*, 451 N.E.2d at 1099. Similarly, Mercado did not "attack" M.F.'s reputation by trying to impeach and contradict her testimony. *See* 12 Miller, *supra*, at 876.

[32] Further, Mercado is correct that before reputation evidence is admissible, the proponent of the evidence must first establish a foundation that identifies, *inter alia*, a readily definable community within which the reputation exists and that the person testifying to the other person's reputation for truthfulness has sufficient contact with the community to know about the person's reputation within that community. *See Bowles*, 737 N.E.2d at 1153. The State did not meet, let alone attempt to meet, this foundational requirement.

[33] However, Mercado has waived this issue for two reasons. First, Mercado did not object to Francisco's testimony that M.F.'s reputation for truthfulness was good. Second, Mercado raises this foundational requirement for the first time on appeal. While he challenged the State's first attempt to elicit testimony from Francisco about M.F.'s reputation for truthfulness, his objection was vague and said nothing about the foundational requirements for testimony about a person's reputation for truthfulness. *See Tr. Vol. II* at 156. Grounds for objection must be specific and any grounds not raised in the trial court are not available on appeal. *Williams v. State,* 690 N.E.2d 162, 173 (Ind. 1997). When the State asked Francisco a second time about M.F.'s reputation for truthfulness, Mercado lodged no objection, let alone an objection that alleged

the State had failed to establish the necessary foundation. Accordingly, Mercado has waived his issue. *See Grace v. State*, 731 N.E.2d 442, 444 (Ind. 2000).

[34] Waiver aside, if admission of Francisco's testimony about M.F.'s reputation for truthfulness was error, it was harmless error. The testimony at issue was contained in two sentences; Francisco's testimony regarding M.F.'s truthful character was brief and isolated. Within the context of a two-day trial where Mercado vigorously cross-examined M.F., the impact of such testimony was likely small. *Cf. Greenwell v. State*, 588 N.E.2d 1269, 1270-71 (Ind. 1992) (excluding evidence of reputation for violence of defendant's girlfriend, who testified for prosecution, was harmless). Also, while Francisco did attest to M.F.'s truthfulness, he did so indirectly, stating only that she "wasn't one to keep secrets from us." *Tr. Vol. II* at 157. We find the impact of Francisco's testimony was modest because a jury would likely give less credence to a parent's testimony about their child's reputation for truthfulness than similar testimony from a priest, pastor, teacher or counselor.

[35] As to Mother's testimony, Mercado contends admission of her testimony was fundamental error. "Failure to object at trial waives the issue on review unless fundamental error occurred. Fundamental error is an extremely narrow exception that applies only when the error amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. The claimed error must be

so prejudicial to the rights of a defendant as to make a fair trial impossible." *Baumholser*, 62 N.E.3d at 414 (citations omitted).

[36] Mercado mischaracterizes Mother's testimony as vouching, and the State makes the same mistake. *See Appellant's Br.* at 7, 15-18; *Appellee's Br.* at 20-24. The prohibition on vouching rests within Evidence Rule 704(b) and concerns only statements that attest to the truthfulness of a person's *testimony*. The admissibility of testimony about a person's reputation for truthfulness is governed by Evidence Rule 608. 13 Robert L. Miller, Jr., Indiana Practice, Indiana Evidence at 186 (4th ed. 2016). Here, Mother only testified about M.F.'s reputation for truthfulness, not the truth of her testimony. Thus, the issue here is whether Mother's testimony was fundamental error under Evidence Rule 608(a), not Evidence Rule 704(b). Because Mercado does not argue that Mother's testimony was fundamental error under Evidence Rule 608(a), he has waived this issue. *Cf. Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) (party waives issue by failing to make cogent argument).

[37] Waiver notwithstanding, this case is like *Alvarez-Madrigal*, 71 N.E.3d at 891, where we found that a pediatrician did not vouch for the victim when the pediatrician testified that "some statistics will quote that less than two to three children out of a thousand are making up claims [about being molested]." *Id.* at 892. The pediatrician did not vouch for the child because the pediatrician's testimony was not an opinion about the truth of the allegations or the credibility of the child. *Id.* at 893.

[38] Even more pertinent to our analysis is *Baumholser*, 62 N.E.3d at 415, where we found that Baumholser failed to prove fundamental error when he argued the trial court erroneously admitted vouching testimony prohibited by Evidence Rule 704(b). Baumholser claimed that a forensic interviewer vouched for the victim by testifying about the propensity of child molesting victims to delay disclosure of the event. *See id*. at 414-15. We found that the forensic interviewer's testimony was not vouching because it did not relate to the truth or falsity of the allegations but instead made a statement about how victims of child molestation behave in general. *Id.* at 416. Thus, we found no error, fundamental or otherwise.

[39] We reach the same result here. Mother's testimony that M.F. did not know how to lie was not vouching testimony under Evidence Rule 704(b) because Mother did not say that the allegations against the State were true or that M.F.'s testimony was true. Instead, she testified about *M.F.'s reputation* for truthfulness. The restrictions on such testimony are delineated under Evidence Rule 608(a). Thus, Mercado should have argued that admission of this testimony was error (and fundamental error) under Evidence Rule 608(a). He failed to do so, and, thus, he has failed to demonstrate error, fundamental or otherwise.

[40] Finally, as was true of Francisco's testimony, Mother's testimony was brief and isolated. Mercado has failed to show that this testimony, within the context of a two-day trial where he vigorously cross-examined M.F., undermined his

substantial rights and made it impossible for him to receive a fair trial. *See Baumholser*, 62 N.E.3d at 414.

## III. Sentence

Under Indiana Appellate Rule 7(B), we may revise a sentence if, after due consideration of the trial court's decision, we find the sentence inappropriate considering the nature of the offense and the character of the offender. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). We consider not only the aggravators and mitigators found by the trial court but also any other factors appearing in the record. *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013). We defer to the trial court's decision, and our goal is to determine whether the sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). We seek to leaven the outliers, not to achieve a perceived correct result. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Thus, "deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Ultimately, our review should focus on the aggregate sentence; that is, we "should focus on the forest - the aggregate sentence - rather than the trees - consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell,* 895 N.E.2d at 1225.

[42]     Mercado initially focuses on the length of his aggregate sentence, seventy years plus ten years suspended to probation. Mercado contends that since he was forty-four years old when he was sentenced, his punishment amounts to a life sentence.

[43]     As to the nature of the offense, Mercado does not minimize the severity of child molesting. However, he contends the nature of his offense makes his sentence inappropriate. For instance, he contends that since there was no evidence submitted at the sentencing hearing about emotional trauma M.F. may have suffered, the nature of his offense was such that his seventy-year sentence is inappropriate.

[44]     Mercado likewise contends that his character makes his sentence inappropriate. He notes that 1) this is his first conviction, 2) he was gainfully employed as an accountant, and 3) he has supported his wife and two children. He also points to the thirty letters, written on his behalf, that vouched for his good character. Those letters were written by co-workers, a priest, college friends, relatives, a godson, and even Mercado's bail bondsman. *Conf. App. Vol. II* at 34-66. The letters describe Mercado as a hard-working, devoted, family man who was active in the community and local Catholic parish. *Id.* They also described him as man of high moral character. *Id.* Two witnesses, including Beatriz, testified at the sentencing hearing about Mercado's high moral character. *Tr. Vol. III* at 109-17.

[45]     We disagree with Mercado that the nature of his offense makes his seventy-year executed sentence inappropriate. Even though the State filed only two charges against Mercado, he clearly touched M.F. inappropriately many times over several years. He engaged in grooming behavior, showering M.F. with gifts, special events, and constant attention. *See Harlan v. State*, 971 N.E.2d 163, 171-72 (Ind. Ct. App. 2012). As her uncle, he exploited his position of trust. *See Rodriguez v. State*, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007). He threatened M.F. that she would never again see Beatriz, M.F.'s aunt, if M.F. told anyone that Mercado had molested her. *Tr. Vol II* at 117.

[46]     However, we agree that Mercado's sentence is inappropriate considering his character.[4] Mercado essentially has no criminal record. While he was charged in Illinois in 1992 for violating the Illinois Liquor Control Act, it is not clear how this case was resolved. *Appellant's Conf. App. Vol. II* at 70. As noted above, Mercado has been gainfully employed, supported his family, and participated in community and church activities. All thirty character letters, including the letters from the priest and Mercado's bail bondsman, spoke highly of Mercado, highlighting his work ethic, devotion to family, and community involvement. Attempting to minimize the letters, the State describes the letters as "mainly from people that did not believe that Mercado was guilty or believed that he had not received a fair trial." *Appellee's Br.* at 27. We take issue with this

---

[4] While we must consider both the nature of the offense and the character of the offender in determining whether a sentence is inappropriate, a defendant need not necessarily prove both prongs for us to find a sentence inappropriate. *See Conner v. State*, 58 N.E.3d 215, 218-19 (Ind. Ct. App. 2016).

characterization. Only one-third of the letters posited that Mercado was innocent and that his trial was unfair. Moreover, these letters did not dwell on the propriety of the trial or conviction but instead, like all the letters, focused almost solely on Mercado's good character. *Appellant's Conf. App. Vol. II* at 34-66.

[47] Finally, because our review of sentences "should focus on the forest – the aggregate sentence – rather than the trees" - *see Cardwell,* 895 N.E.2d at 1225 - we agree with Mercado that his seventy-year executed sentence, plus ten years of probation, effectively makes his sentence a life sentence. Thus, because Mercado's sentence is inappropriate considering his character and the length of the aggregate sentence, we invoke our authority under Appellate Rule 7(B) and revise Mercado's sentence to concurrent terms of forty years.

[48] Affirmed in part and reversed in part.

Riley, J., concurs.

Vaidik, C.J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Leobardo Mercado,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

Court of Appeals Case No.
18A-CR-1280

**Vaidik, Chief Judge, concurring in part and dissenting in part.**

[49] I concur with the majority as to all issues except one. That is, I disagree with the majority's decision to revise Mercado's sentence to concurrent terms of forty years. Although I agree with the majority's conclusion that Mercado's original sentence of eighty years, with seventy years executed and ten years suspended to probation, is inappropriate, I would reduce his sentence differently.

[50] To an extent, I agree with Mercado's assertion that an appropriate sentence would include "substantial time under court supervision." Appellant's Br. p. 20. Given the nature of his offenses, I believe that Mercado needs to be supervised as he transitions from prison into the community. Not only does

building a probationary period into Mercado's sentence ensure that he will be supervised by a probation officer, but it also gives him the opportunity to get help as he reintegrates into the community. I would therefore revise Mercado's sentence to include a period of probation, as follows:

For Count I: Class A felony attempted child molesting, I would revise Mercado's sentence to fifty years, with forty years to be executed at the Indiana Department of Correction (DOC) and ten years suspended to probation. For Count II: Level 1 felony child molesting, I would revise Mercado's sentence to forty years, with all forty years to be executed at the DOC, and order that Count II be served concurrent to Count I.

Accordingly, I would reduce Mercado's aggregate sentence to fifty years, with forty years to be executed at the DOC and ten years suspended to probation. I otherwise concur in full with the majority.